AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
07/25/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: DVE DEPUTY

FILED
July 25, 2025
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY: Nancy Boehme
Deputy Clerk, U.S. District Court

United States of America

v.

Marco Antonio Ramirez-Macias,

Defendant.

Case No.  2:25-mj-04687-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on or about June 14, 2023, and continuing, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1253(a)(1)(A) | Penalties Related to Removal: Failure to Depart the U.S. |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Nicholas DeSimone, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 25, 2025

Judge's signature

City and state:  Santa Ana, California

Hon. Douglas F. McCormick, U.S. Magistrate Judge
Printed name and title

AUSA L. Kole

**AFFIDAVIT**

I, Nicholas DeSimone, being duly sworn, declare and state as follows:

### I. **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Marco Antonio Ramirez-Macias ("defendant"), charging him with violating Title 8, United States Code, Section 1253(a)(1)(A), Penalties Related to Removal: Failure to Depart the U.S.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. **BACKGROUND OF RESIDENT AGENT IN CHARGE NICHOLAS DESIMONE**

3. I am a Homeland Security Investigations ("HSI") Special Agent ("SA") and have been employed as such since February 21, 2016. I am authorized by Title 8, United States Code, Section 1357, and Title 19, United States Code, Section 1589a, to investigate immigration law and customs law violations, respectively.

4. On March 5, 2009, I began my law enforcement career with the United States Border Patrol ("USBP") as a Border

Patrol agent.  From 2009 to 2016, I was primarily assigned to the USBP's El Centro Sector in Southern California.  During my tenure with the USBP, I was assigned to various interdiction and intelligence teams, and from my assignment on these teams, I became trained and experienced in surveillance, investigative research, the analysis of telephone records, and basic investigative skills related to the interdiction of contraband smugglers.  Additionally, during this period, I was the Indio Border Patrol Station's prosecutions officer.  In that role, my duties involved conducting reactive investigations of both immigration and customs violations and, if applicable, seeking criminal prosecutions for those violations.  During the course of my employment with the USBP, I was involved in hundreds of prosecutions related to the illegal entry of criminal aliens into the United States and the smuggling of human and drug contraband by transnational criminal organizations.

5. In 2016, I began my employment with HSI.  I attended and completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the HSI Special Agent Training Program.

6. Following the completion of my training, from 2016 to 2019, I was assigned to the HSI Los Angeles International Airport ("LAX") Office in El Segundo, California, where I was primarily assigned to investigating contraband smuggling – namely opioid smuggling – via the mail and commercial cargo systems.

7. From 2019 to 2024, I was a member of Group 46 of the Southern California Drug Task Force, where I was tasked with performing criminal investigations into complex drug trafficking conspiracies and networks. During this period, I led and participated in dozens of investigations of complex drug trafficking conspiracies.

8. I am currently the Resident Agent in Charge of the HSI Integrated Operations Group Task Force (the "Task Force"). As part of this Task Force, I investigate various federal crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations. As a result of my collaboration with these DHS employees on this Task Force, I have conducted investigations for a wide variety of federal offenses and am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

9. Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

   a. Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement

databases from another person's fingerprints. In many cases, DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b. Moreover, when a person is fingerprinted by DHS agencies, such as ICE or its predecessor, the Immigration and Naturalization Service, those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file"). An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage. That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been ordered removed, removed, or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

10. Generally, after an arrest for a criminal or immigration offense, a person's biometric fingerprint information is collected by the arresting agency and enrolled into a nationwide repository for criminal history records as part of a normal booking process. That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and

4

those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

### IV. IMMIGRATION REMOVAL PROCEDURES

11. Through my training and experience, and my interactions with others involved in the adjudication of immigration offenses, I have learned or am aware of the procedures related to removal proceedings.  Based on information relayed to the Task Force by ICE Office of the Principal Legal Advisor, I am aware of the following:

   a.   Removal proceedings under Title 8, United States Code, Section 1229a ("1229a") are triggered by the filing of a Notice to Appear ("NTA"), which orders an alien to appear before an immigration judge.  Under 1229a proceedings, the role of the immigration judge is limited to determining whether an alien may be admitted to the United States or removed from the United States.

   b.   Throughout the entirety of these removal proceedings, the alien is provided competent translation/interpretation services by the immigration court.

   c.   In general, at the alien's first appearance, the immigration judge explains to the alien the nature of the proceedings and the allegations and charges alleged on the NTA, and explains the rights to which an alien is entitled in the removal proceedings, including the right to obtain counsel of

5

their choice at their own expense, the right to review and object to DHS' evidence, the right to present evidence, the right to call witnesses, and the right to appeal an adverse decision. During these proceedings, the immigration court typically provides the alien with the opportunity to obtain legal representation.

      d.   In the case of an alien charged as being in the United States without being admitted or paroled, DHS has the burden of proof to establish alienage. Once alienage has been established, unless the alien demonstrates by clear and convincing evidence that the alien is lawfully in the United States pursuant to a prior admission, the alien must prove that they are clearly and beyond a doubt entitled to be admitted to the United States and are not inadmissible as charged.

      e.   In the case of an alien charged as being deportable after having been admitted to the United States, DHS has the burden of establishing by clear and convincing evidence that the alien is deportable.

      f.   Once an alien's inadmissibility or deportability is established, the alien seeking relief or protection from removal has the burden to establish that they satisfy the applicable eligibility requirements and, with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of such discretion.

      g.   The immigration judge will set a hearing on the merits of the any form of relief sought by the alien. During

that hearing, the alien is entitled to testify in support of their application and present evidence and witnesses.

  h. At the conclusion of the removal proceedings, the immigration judge will issue either a written or oral decision. If the alien is ordered removed, the immigration judge shall designate the alien's country of choice for removal and any alternate country pursuant to Section 241(b) of the Immigration and Nationality Act.

  i. Both the alien and DHS have the right to reserve or waive appeal of the immigration judge's decision and order.

  j. If both parties waive appeal, the immigration judge's order becomes administratively final, and DHS may execute the order of removal by removing the alien from the United States.

  k. If either or both parties reserve appeal but fail to timely file an appeal with the Board of Immigration Appeals ("BIA") within 30 days of the immigration judge's order, the order becomes administratively final upon expiration of the appeal period, and DHS may execute the order of removal by removing the alien from the United States.

  l. The filing of the alien's appeal with the BIA automatically stays the order of removal until the BIA enters its decision on the appeal.

  m. The alien may appeal the BIA's decision to the relevant federal court of appeals within 30 days of the date of the BIA's order.

   n. The alien's filing of an initial petition for review with a motion for stay of removal with the relevant court of appeals (for California, that court is the U.S. Court of Appeals for the Ninth Circuit (the "Ninth Circuit")) will automatically stay the removal order until the court of appeals renders a decision on the motion for stay of removal.

   o. If the court of appeals denies the motion to stay removal, DHS may execute the removal order while the petition for review is pending.

   p. DHS verifies whether the court of appeals has granted a motion for a stay of removal prior to executing the alien's order of removal.

   q. The court of appeals' decision denying the petition for review becomes final once the court of appeals issues the mandate, and DHS may then execute the order of removal by removing the alien from the United States.

 12. Based on my training and experience, I know that an NTA contains a notice to the alien being placed in removal proceedings disclosing the following:

   a. The alien is required to provide the DHS, in writing, with their full mailing address and telephone number. If this information changes during the course of the removal proceedings, the alien is required to provide an immediate notice, using Form EOIR-33, to the immigration court. If such notice is not submitted to the immigration court by the alien under these circumstances, the government shall not be required to provide the alien with written notice of a removal proceeding

8

hearing.  Failure to attend a hearing by the alien at the time and place designated by the NTA or anytime thereafter by the immigration court may result in an order of removal being issued, in the absence of the alien, by the immigration judge. This is referred to as an "in absentia" order of removal.

      b.   If an alien becomes subject to an order of removal, they are required to surrender for physical removal from the United States within 30 days of the order becoming administratively final, unless the immigration court, BIA, or a federal court issues an order staying the execution of the removal order.  Failure to surrender for removal as required may result in criminal prosecution of the alien.

## V.  SUMMARY OF PROBABLE CAUSE

13.  On July 25, 2016, defendant was ordered removed from the United States by an Immigration Judge.

14.  Defendant appealed the decision and, on May 15, 2023, the Ninth Circuit issued a mandate causing defendant's removal to be affirmed.

15.   This investigation has since revealed that defendant is believed to reside in California in violation of Title 8, United States Code, Section 1253(a)(1)(A), Penalties Related to Removal: Failure to Depart the U.S.

## VI. STATEMENT OF PROBABLE CAUSE

16.  In June 2025, Homeland Security Investigation (HSI) provided the United States Department of Health and Human Services (HHS) records, including the biographical identifiers of defendant, an alien previously ordered removed from the

9

United States. Based on the biographical identifiers provided by HSI, HHS discovered that defendant was associated with a claim for Medicare, Medicaid, or Children's Health Insurance Program (CHIP) benefits that was made on January 1, 2025. I know, based on my review of official publications from the State of California, that to qualify for Medicare, Medicaid, CHIP benefits, or any other form of health care coverage in California the applicant must demonstrate that they are a resident of California. Furthermore, the applicant must provide documentation to establish proof of residency including government-issued identification, utility bills, lease agreements, government-issued mail, employment records, school records, or external declarations from witnesses verifying residency. I know, based on my review of official publications from the State of California, that in addition to proof of residency, applicants must provide proof of identity and legal status in the United States to receive health care coverage in California. Acceptable documents for identity and legal status verification include U.S. passports, permanent resident cards, and California driver's licenses amongst other documents.

    17. According to HHS data that were disclosed to HSI, I am aware that defendant is associated with a claim for Medicare, Medicaid, or CHIP benefits in the State of California that was made on January 1, 2025. In order to make a claim for these benefits, the applicant submitting the claim would have provided documentation to prove the applicant's identity and residency in California.

18. From on or about June 30, 2025 through today, I have conferred with other law enforcement officers, including DHS personnel, reviewed records associated to defendant's unique fingerprint identifier that are contained in DHS indices, and reviewed other records related to defendant's case. I learned the following about defendant's immigration history:

    a. Defendant is a citizen and national of Mexico.

    b. Defendant was placed in removal proceedings, which are commenced by service on defendant of an NTA, alleging unlawful presence in the United States. Based on my experience, I believe that defendant was served with an NTA and that defendant signed the certificate of service contained in the NTA acknowledging that he received it. Accordingly, the NTA made defendant aware of the penalties for failing to depart, as explained more thoroughly in Paragraph 12 of this affidavit.

    c. On or about July 25, 2016, an immigration judge ordered defendant removed from the United States to Mexico. According to the order, defendant's attorney was served notice of the removal in person.

    d. Defendant appealed the decision of the immigration judge finding him removable from the United States to the BIA.

    e. On December 2, 2016, the Board of Immigration Appeals issued a decision that dismissed defendant's appeal. This order was sent to defendant's counsel and to defendant.

    f. Defendant appealed the BIA decision to the Ninth Circuit through counsel. On July 12, 2022, defendant's counsel

11

withdrew from the case, the Ninth Circuit ordered that defendant would proceed pro se, and issued an order to be served on defendant personally.

      g.   On January 27, 2023, the Ninth Circuit issued a memorandum decision denying in part and dismissing in part defendant's petition for review. On May 15, 2023, the Ninth Circuit issued a mandate providing that its judgment was effective that date, which caused defendant's removal order to be affirmed and become final.

      h.   There was no record of defendant departing the United States subsequent to the Ninth Circuit's mandate.

      i.   A removal could be arranged officially through U.S. Immigration and Customs Enforcement or by self-removal through non-governmental means, where defendant would provide proof of removal to U.S. Immigration and Customs Enforcement.

      j.   Defendant's country of citizenship, Mexico, maintains an embassy In Washington, DC (and consulate offices in cities throughout the United States). One of the services offered by the Mexico embassy is issuing passports to their citizens.

      k.   In June 2025, the Department of Health and Human Services confirmed that defendant is associated with HHS benefits and/or an application that was filed for an HHS benefit, and that a mailing address of 520 Colorado Ave, Apt 304, Santa Monica, California, 90401 on January 1, 2025 was associated with this claim.

## VII. CONCLUSION

19. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1253(a)(1)(A), Penalties Related to Removal: Failure to Depart the U.S.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 25th day of July
2025.

_____
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE